UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

| | |
|---|---|
| CIVIL ACTION NO. 5:08-cv-274-KSF ) | |
| ) | |
| WALDEMAR E. ALBERS ) | |
|  REVOCABLE TRUST, ET AL., ) | |
| ) | |
|         PLAINTIFFS ) | |
| ) | |
| ) | |
| V. ) | Pending in the Middle District of |
| ) | Tennessee, Case No. 3:07-cv-421 |
| ) | |
| MID-AMERICA ENERGY, INC., ET AL., ) | |
| ) | |
|         DEFENDANTS ) | |
| ) | |
| ) | |

\* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of Megan Coffman, a non-party to this action, by counsel, to quash a subpoena duces tecum that plaintiffs served on her at her residence on August 14, 2008, which requested her to appear for deposition on September 3, 2008, and to produce certain documents, as more particularly described in the attachments to said subpoena. [DE #23]. The motion to quash was filed on August 28, 2008, has been fully briefed, and is ripe for review.[1]

As grounds for her motion to quash subpoena duces tecum, movant Megan Coffman asserts that said subpoena should be quashed because the information sought from her is exempt from disclosure due to (1) the attorney-client privilege, (2) the spousal privileges, and (3) the Fifth Amendment privilege. Additionally, movant states that she has no knowledge about any of the items listed in the subpoena that she has been requested to produce and that the documents sought from her are not within her possession, custody or control.

---

[1] By Order of June 24, 2008, the presiding district judge referred all pending motions to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for resolution. [DE #3].

In response to movant's motion to quash, plaintiffs contend that movant has failed to establish either a factual or a legal foundation for her motion to quash and that she is not entitled to rely on any of the privileges asserted to complete bar the taking of her deposition in this matter.

**Discussion/Analysis**

Plaintiffs herein are judgment creditors who have obtained a default judgment in the amount of $1.79 Million against the defendants/judgment debtors in the United States District Court for the Middle District of Tennessee. Plaintiffs are pursuing post-judgment discovery in order to locate assets of the defendants/judgment debtors on which to levy to satisfy the $1.79 Million default judgment. The subpoena duces tecum served on movant Megan Coffman is part of the plaintiffs' continuing efforts to discover those assets which they might attach to satisfy their judgment.

The scope of post-judgment discovery under the Federal Rules of Civil Procedure is very broad, as seen from Fed.R.Civ.P. 69(b), which, in pertinent part, provides: "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from *any* person - including the judgment debtor - as provided in these rules or by the procedure of the state where the court is located." (emphasis added). Thus, post-judgment discovery under Rule 69 is permissible from third parties in order to discover concealed or fraudulently transferred assets. *See, Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977). If any documents sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoena is unreasonable, oppressive, annoying, or embarrassing. *Bariteau v. Krane*, 206 F.R.D. 129 (W.D. Ky. 2001) (documents sought by a subpoena duces tecum relating to efforts to recover investor funds were relevant to claims contained in plaintiff's complaint where plaintiff claimed that several defendants fraudulently obtained several million dollars from plaintiff, and plaintiff was attempting to recover the money).

The information sought in the subpoena can broadly be divided into the following three categories: (1) information related to Gary Milby; (2) information related to a number of trusts and

businesses; and (3) information (documents) related to Central Bank & Trust Company account number 10366604.

## A. Attorney/client privilege

Movant Megan Coffman, the wife of Bryan Coffman, an attorney who was at one time counsel for Gary Milby, contends that plaintiffs are entitled to none of this information requested in the subpoena duces tecum from her by reason of the attorney/client privilege. In support of this argument, she states that she is not employed by her husband's law firm and that she does not have access to his law files. Movant also states that she believes that Gary Milby is her husband's former client and that other than having heard her husband mention his name, she has no information about Gary Milby or any of the trusts or businesses listed on the subpoena. Additionally, movant states that she has no knowledge about the bank account listed on the subpoena and that she has no access to and no check writing privileges on this bank account.

Movant notes that plaintiffs can not obtain Bryan Coffman's legal files from him in relation to Gary Milby by reason of the attorney/client privilege, and she asserts that plaintiffs cannot circumvent that privilege by seeking the very same information and files from her. Movant submits that plaintiffs cannot compel an attorney's spouse to locate and produce her husband's privileged legal files and that to the extent plaintiffs desire to pierce the attorney/client privilege, they should direct such attempts to her husband, Bryan Coffman, not her, his wife.

"The attorney-client privilege attaches to direct communications between a client and his attorney as well as communications made through their respective agents. The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice." *Lathem Equipment Co. v. Deere and Co.,* 2007 WL 2873981, *5 (E.D. Mich. 2007). "[C]lients and their agents must disclose on request any relevant fact within their knowledge even if it incorporated a statement of that fact into a communication to the attorney." *Reed Diary Farm v. Consumers Power Co.*, 576 N.W.2d 709, 712 (Mich. Ct. App. 1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981).

3

"The attorney-client privilege is waived if the confidential communication has been disclosed to a third party, unless made to attorneys for co-parties in order to further a joint or common interest (known as the common interest rule or the joint defense privilege) [.]" *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 711-12 (5th Cir. 2001) (citations omitted). "The burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Dakota,* 197 F.3d 821, 825 (6th Cir. 1999).

The Magistrate Judge concludes that the attorney/client privilege is personal and can only be asserted by either the attorney or the client in question. Thus, the attorney/client privilege is not applicable to movant Megan Coffman in this case for the following two reasons: she is not an attorney and she is not the client (Gary Milby appears to be the client in question who could assert the privilege) of the attorney Bryan Coffman, who would also be entitled to assert the privilege. Consequently, Megan Coffman has no standing to assert the attorney/client privilege in this particular case.

**B.     Spousal privilege**

There are two types of spousal privileges – the adverse spousal testimony privilege and the confidential spousal communications privilege. *United States v. Porter*, 986 F.2d 1014, 1018 (6th Cir. 1993).

**i.     adverse spousal testimony privilege**

The adverse spousal testimony privilege, which permits an individual to refuse to testify in a criminal proceeding against his or her spouse, is limited to criminal cases. *United States v. Premises Known as 281 Syosset Woodbury Road*, 71 F.3d 1067, 1070 (2nd Cir. 1995) (citing *Appeal of Malfitano*, 633 F.2d 276, 277 (3d Cir. 1980); *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 542-45 (7th Cir. 1977), *cert. denied*, 439 U.S. 820 (1978); 2 Jack B. Weinstein *et al.,* WEINSTEIN'S EVIDENCE, ¶ 505[05], at 505-41 (1995); Developments in Law-Privileged Communications, 98 Harv.L.Rev. 1450, 1570 (1985). The privilege applies only to testimony that

"'disfavors the other spouse's legal interests in the very case in which the testimony is offered.'" *Id.* at 1070-71.

The subpoena at issue was served on Megan Coffman as part of the plaintiffs/judgment creditors post-judgment discovery efforts in their lawsuit filed against Gary Milby and his Mid-America entities in the Middle District of Tennessee, wherein they obtained a default judgment against Gary Milby. Since that action is not a criminal case, and since Bryan Coffman, movant Megan Coffman's husband, is not a party to that lawsuit, the Magistrate Judge concludes that the adverse spousal testimony privilege is not applicable to this action and cannot be used as a shield by Megan Coffman to protect her from testifying in her deposition, as noticed.

**ii.    confidential spousal communications privilege**

It is well-settled that marital communications that are privately made between spouses are presumed to have been intended to be confidential and therefore privileged. *Pereria v. United States*, 347 U.S. 1, 6 (1954). However, like other presumptions, the presumption that private marital communications are confidential may be overcome by proof of facts showing that the communications were not intended to be private. *Id.* "The presence of a third party negatives the presumption of privacy. So too, the intention that the information conveyed be transmitted to a third person." *Id. See Wolfe*, 291 U.S. at 14 (holding that a communication from a husband to his wife was not within the confidential spousal communications privilege because of the voluntary disclosure by him to a third person, his stenographer); *United States v. McGown*, 711 F.2d 1441, 1452 (9th Cir. 1953).

It is also equally well-settled that "whenever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." *Wolfe v. United States*, 291 U.S. 7, 14 (1934) (citing *Caldwell v. State*, 41 So. 473 (Ala. 1906); *Parkhurst v. Berdell*, 18 N.E. 123 (N.Y. 1888); *Truelsch v. Miller*, 202 N.W. 352 (Wis. 1925)). When such communications are made in the presence of a third party, they are

not regarded as privileged because they were not made in confidence. *Id.* (citing *Jacobs v. United States*, 161 F.694 (1st Cir. 1908). *See Pereria, supra; Wolfe, supra; McCown, supra.*

The subpoena duces tecum at issue appears to seek documents and Megan Coffman's testimony concerning a number of subjects, not all of which concern privileged communications between spouses. In the event the questioning *does* require Megan Coffman to disclose privileged communications from her husband, either Megan Coffman or her counsel can assert the confidential spousal communications privilege at that time and on a question-by-question basis. Additionally, although Megan Coffman may have no documents to produce in compliance with the subpoena duces tecum, it is clear that the plaintiffs/judgment creditors want more than just documents from Megan Coffman. They desire to question her about many topics; whether she has any knowledge about these topics and/or whether her answers to the questions are protected by the confidential spousal communications privilege remains to be seen. Nevertheless, the Magistrate Judge concludes that the plaintiffs/judgment creditors are entitled to take Megan Coffman's deposition to discover what knowledge she has, if any, that is relevant to their efforts to satisfy their judgment.

## C.     **Fifth Amendment privilege**

In her reply to plaintiffs' response to her motion to quash the subpoena duces tecum at issue, movant Megan Coffman also contends that she cannot be compelled to testify in this matter by reason of her rights under the Fifth Amendment to the United States Constitution. Movant asserts: "The Fifth Amendment affords one final and concluding reason to quash the subpoena at issue. Even if the Plaintiffs could somehow overcome all of the foregoing hurdles, the Fifth Amendment forecloses any attempt to subpoena Megan Coffman." Reply Memorandum in Support of Motion to Quash Subpoena, p. 8 [DE #43].

"The fifth amendment privilege against self-incrimination is one of our most fundamental rights as citizens." *Andover Data Services v. Statistical Tabulating Corporation*, 876 F.2d 1080, 1082 (2d Cir. 1989). The right against self-incrimination may be asserted in any civil, criminal, or administrative proceeding. *Kastigar v. United States*, 406 U.S. 441 (1972); *Lefkowitz v. Turley*, 414

U.S. 70, 77 (1973). In *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256-57 (1983), the United States Supreme Court held that a district court cannot compel a party in a civil action "to answer deposition questions ... over a valid assertion of h[er] Fifth Amendment right, absent a duly authorized assurance of immunity at the time." Additionally, the Fifth Amendment privilege protects a mere witness as fully as it does one who is also a party defendant. *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924).

In considering this matter, the Magistrate Judge has also reviewed case law concerning the assertion of one's Fifth Amendment privilege and concludes that Megan Coffman cannot rely upon the Fifth Amendment to prevent the plaintiffs/judgment creditors from taking her deposition. A witness is not entitled to a *blanket assertion* of the Fifth Amendment privilege, and the Fifth Amendment privilege cannot be raised *in advance of the questions asked*, as seen in In re Morganroth, 718 F.2d 161, 167 (6th Cir. 1983), wherein the Sixth Circuit stated:

> . . . A blanket assertion of the privilege by a witness is not sufficient to meet the reasonable cause requirement and the privilege cannot be claimed in advance of the questions. The privilege must be asserted by a witness with respect to particular questions, and in each instance, the court must determine the propriety of the refusal to testify. *See Hoffman, supra,* 341 U.S. 486-88, 71 S.Ct. 818-819.
> A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime or furnishes a link in the chain of evidence needed to prosecute. In *Hoffman*, the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed.

During her deposition, Megan Coffman may, in fact, be able to invoke her Fifth Amendment privilege against self-incrimination, depending on the question asked, but she cannot prevent the taking of her deposition by the blanket assertion of that privilege, and she cannot assert the privilege in advance of the questions asked. The Fifth Amendment privilege must be asserted on a question-by-question basis.

However, the Magistrate Judge also notes that since plaintiffs/judgment creditors have also elected to take Bryan Coffman's deposition, his deposition should be taken prior to Megan

Coffman's deposition. The taking of Bryan Coffman's deposition may obviate the need to take Megan Coffman's deposition.

Accordingly, **IT IS HEREBY ORDERED** that:

1. The motion of movant Megan Coffman to quash the subpoena duces tecum served on her on August 14, 2008 [DE #23] is **DENIED**.

2. Plaintiffs/judgment creditors are directed to take Bryan Coffman's deposition prior to taking Megan Coffman's deposition.

This 10th day October, 2008.

Signed By:
James B. Todd
United States Magistrate Judge